Yes, good morning, Your Honor. I know you don't start an oral argument by apologizing, but I do apologize. There was an accident on the Turnpike and I was sitting in traffic for over an hour. We got your message. Thanks very much. Thanks, Your Honor. Your Honor, today I'm here, Regis Fernandez, on behalf of the court. I respectfully request three witnesses, Mr. Shah Hashmi, and essentially what we're asking the court is to have the Immigration Judge and the Board of Immigration Appeals abide by its own present decision, in particular a matter of Valarie Pacheco, which is a 2002 decision. With regards to a matter of Valarie Pacheco, Your Honor, I would like to delve into it a little bit. Valarie Pacheco is a 2002 decision, which came about more or less around the same time when the Department of Homeland Security was created and the agencies split up. They split into the U.S. CIS and ICE, which is the Enforcement Branch and the Benefits Branch. Basically, what a matter of Valarie Pacheco held is that delays in the adjudication of visa petitions, I-130 petitions in marriage-based cases should not deprive an Immigration Judge of jurisdiction over a potential adjustment of status application and removal proceedings. That's a motion to reopen case, right? It is a motion to reopen case. And the government seems to be saying, doesn't say anything about continuances, that's a purely discretionary thing. What's your response? I do agree that the facts are distinguishable in the sense that a matter of Valarie is a motion to reopen case, and this case is a motion for a continuance. But if we were, if the court were to hold that that distinction is meaningful, then we would be in a situation where Mr. Hashmi, Mr. Shah Hashmi would have had to accept the final order of removal, then waited, and then within 90 days have moved to reopen his case, and he would, and then he would be in the position of a matter of Valarie motion to reopen. And I would respectfully argue that that, that, that, that would eviscerate, that distinction would eviscerate the holding and, and, and the principle and matter of Valarie Pacheco. Is there, is there anything to be made of the argument that, that, you know, the immigration judges have to be able to control their docket, and this case had gone on for 18 months with no prospect of resolution in sight, and eventually the door's got to close, can't stay open forever. I agree 100% last night when I was reviewing the arguments in this case, I was trying to figure it out from the perspective of the immigration judge in the sense that he's in a real dilemma here because he can't just continually keep adjourning the case. Well, that's, that's true, but I suppose it depends on the reason for, for the continuances. Yes. I, you know, I'm tempted to ask, well, how long, how long do you, can you really go before you can just slam the door and say, it's too bad? You know, you have to go. Well, there are a lot of things that an immigration judge can do. He has to control his docket, but he also has to control the parties that appear before him, including DHS counsel. That's true. Go back over the reasons for the continuances. Did Hashmi have any, I mean, did he cause any of the, of the delays or continuances? Hashmi did everything he was supposed to do, and, and, and this is what I want to explain. This, this is not a case, this is in fact better than matter of Valarie in which, which is a BIA case dealing with people that married in removal proceedings where there's, where there's a, where, where the, where the responder has a higher burden of showing, showing the marriage is modified. But the BIA seems to disagree. The BIA seems to suggest that part of the reason for the delays was Mr. Hashmi's filling out certain documents and concerns that were raised about the divorce in Pakistan. The BIA never addressed the matter of Valarie, the BIA, the immigration judge never addressed matter of Valarie. So to a certain extent, this is a simple case in, in, in, in the sense that it should be remanded for the BIA in the first instance and the immigration judge in the first instance to address their, their precedent case and why this is distinguishable or why the BIA and the immigration judge shouldn't follow a matter of, matter of Valarie or why it's not in this case. But to the extent that, that with the rest of the question of whether Mr. Hashmi has caused any delays, he didn't cause any delays. He was placed in removal proceedings as a result of filing the I-130 petition and the adjustment of status application. He was, he went to the interview with his wife. There was a, there was a question about a divorce decree that people get divorced all the time. Go back to Judge Jordan's point. And let's say that he was not the reason for any of the delays that, that were, that occurred in this case. Doesn't the immigration judge at some point have to say, this is really enough. It's been 18 months, it's been 24 months. And I have to make a decision in this case. Apart from constitutional issues, the immigration judge has, has, has the obligation to ensure that people get a full and fair hearing, just a fundamental fairness. The immigration judge could have very easily said, we can administratively close this case until the I-130 gets adjudicated. Or we, or, or, or if you're not going to, if, if, if, if, if one party is not going to follow the law, then I'm going to terminate proceedings until the I-130 does get adjudicated. And then you can, and then, and then you can put them in proceedings if you decide to deny the I-130. Should we look at what prejudice would, would result to Mr. Hashmi if the judge says, I can't grant any further continuances? What would happen if the judge does that? I mean, does he, can he still get voluntary removal or involuntary? Does he, is he involuntarily removed or can he get voluntary removal? With regards to voluntary departure, in this case, previous counsel, Judy Goldenberg, she had refused to take voluntary departure in, in, in, in the case because, because at that point, the third circuit hadn't ruled yet that voluntary departure would no longer be a bar to, to adjusting status or staying in voluntary departure. So that's no longer an option for him. Yeah. So that's no longer an option. So he's involuntarily, involuntarily removed. He goes back to Pakistan. The I-30 petition continues, doesn't it? It doesn't, it doesn't to the extent that if he's removed or if he, even if he leaves voluntarily to Pakistan, he's, he's barred for 10 years and he needs two different sets of waivers, one for the removal order and one for the unlawful presence. And, and I will just submit that in this case, he married, he was married in 2001 and it's been five years and, and, and no point has the government said, it's not going to be adjudicated. The government continues to say, we're working on it. We're working on it. Okay. So if he's, if he is removed, it has to be an involuntary removal and he has to stay out of the United States for 10 years. Yes. So in a sense, that's the, that's the prejudice in this case. Are, am I correct in understanding that this marriage existed before removal proceedings were instituted, right? Exactly. And, and, and, and, and because this marriage existed and no one's, no one's made this an issue, but because this marriage existed before removal proceedings, factor number four of matter of validity, which is he has to prove by clear and convincing evidence that the marriage is bona fide, should not be an issue in this case because matter of validity, what it is, it's basically a, it's a policy statement saying immigration judges should not be deprived of jurisdiction because the government refuses to adjudicate I-130s or delays in I-130s. But it also takes all these BIA cases, matter of Char, matter of Arthur and sorts them out. And factor number four is basically because we're dealing with, because matter of validity deals with people that marry in proceedings. And there's the factor number four, what it does is really it borrows the regulation ACFR 204.2, which says that when people marry, when people file an I-130 petition after they've, after the removal proceedings have commenced, that they have to submit some kind of documentation, some bona fides that, that to prove a private facia bona fide marriage. And I understand your position to be, we don't have to do that because we didn't do it after proceedings began. We're married and there's some, some presumption that I attend that. But they, the argument that the government makes relying on the Conn case is that there's only speculation that you would ever get this visa granted in any event. And, or at least they take that to be. The Conn case dealt with labor certifications and it was, and in that case, the labor certification was stuck at the labor department. They had just filed it. And with labor certification, it's different because even if you get a labor certification approved, there's still a long priority date. Marriage to US citizens are visa petitions that all you need is adjudicate the I-130 petition. Once that's approved, it's an immediate relative petition. You don't need to wait. There's no wait period. Do you know the problem with, with his application? Why, why is it being held up? Why it's, if I've got the record correct, it's been three or four years. It's been five years. It's been, no, it's, it's, yes, it's been about, let me see, 2002. You said five years. Yeah, about five years. And really the, the, the, the reason why it hasn't been adjudicated is because once he got put in a ruling proceeding and the file went from the Cherry Hill USCIS office where they adjudicate the I-130s to the litigation department in Newark, they, they basically felt that they, they, they couldn't, they, they, they didn't have the file so they couldn't adjudicate it. The file was with, with litigation. So, and once removal proceedings kind of continued and once he got the removal order, no one worried about it. Everyone thought, ah, this will go away, he'll just get deported. To bring us up to date, I understand the problem is the genuineness of a divorce decree out of Pakistan. Is that correct? Like I wasn't the attorney at the time, but I, but I think that was one of the issues that was raised by the, um, by the, mentioned by the trial attorney. And I think it was, even though, even though the BIA issued an affirmance without opinion decision, they, they did throw it out there that, that, that might be, might be an issue. What's your best, what's your best guess at what the holdup is, is about? My guess is that would not be a holdup because it wouldn't take five years. But what is your best guess? What is the problem? The problem is that, um, as probably as of only until about a month ago, the file just made it to Cherry Hill. Basically until someone... Didn't, it is in Cherry Hill now. The A file is with CIS. I wouldn't be in a position to speak to that, but from the last, uh, letter that I got, that I received from opposing counsel, I believe that they indicated that they would need to re-interview the, the, the individual and that, that interview would happen within 60 to 90 days as of, I think, December 17th. Maybe Ms. Parrish-Gondola can help us out, but you, I guess you perceive no problem. You think your client's going to get the, uh, the I-130 approved? I don't perceive any problem in the sense that the, the, I mean, from, from, from what I see is that the respondent's wife keeps calling me every day to see how the case is going. Um, or the, the, the alien's wife, uh, is the, and, and the spouse are very active in pursuing this case. And, um... I want to, maybe the, Ms. Parrish-Gondola can help us out, but I want to ask you one question. Your time is running. Uh, where is the, the abuse of discretion in the judge's decision? The abuse of discretion is, the abuse of discretion is in the fact that it's contrary to law to not grant the continuance or not abide by a matter of the law in Pacheco. And it's irrational to say that, to, to, to just simply order someone removed and deny continuance and, and, and ignore BIA precedent because of case completion goals. And the third circuit has already, uh, ruled, albeit in a non-public decision, Romano-Varian, which I cited in my brief, that, um, insistence upon adherence to case completion at the expense of fairness to aliens, um, is, is not something that, that, that the immigration judges should engage in. I have one quick question. Uh, am I correct that, uh, before the immigration judge, both, uh, you obviously and the government had agreed and stipulated to a further continuance and the DIJ said no. Exactly. If, um, I'm, uh, I think it's in page 80, but the, the, what happened is at the last hearing, uh, Judy Goldenberg, prior, prior counsel for the judge and said, Hey judge, we worked it out. Um, we, we figured this problem out. USCIS and Cherry Hill is going to assume the file and they will adjudicate it. And I spoke to chief, uh, counsel, Charlie Parker, that's in the transcript. And, and he's agreed to a six month adjournment. This case will be resolved. And the judge said no. And that violates the last, uh, I mean, in essence that, that, uh, that goes to the heart of the case. And they're giving an objection on the basis that the I-130 is pending because they're agreeing that the, the trial attorney in this case agreed that the I-130 should have been adjudicated. All right. Okay. I want to go back to the, uh, divorce decree and I will admit that I'm going outside the record. Does anybody know why the divorce decree was challenged? By whom it was challenged? When it was challenged? What had been done? Has your client, for example, done anything to, uh, validate the divorce decree by his own means? After all, he was the one that supposedly got the divorce in Pakistan. Has he done anything? Has anybody done anything to uncover what the supposed deficiency in the divorce decree is? I'm not 100% clear on this, but I, but, uh, what happened is when, when, when the client went to the interview, he submitted a divorce decree from Pakistan. And I think the issue came up because in filling out the forms, apparently the primaries hadn't been mentioned, but it, but it was, but that's what interviews are for. So, so that, uh, uh, the jury, the examination officer can, uh, make sure that everything's complete. So it was completed then. And then the issue came up, oh, you have to submit additional taxes and we got to look into the divorce. But I, to, to, to, uh, the divorce decree is a red Herring in the sense that it's, that authentication of documents routinely happens in a few months. And, um, the real issue was that simply they didn't have a file. So they never, the, the, the, the government never even, uh, from what I understand, uh, took any steps to, to, to, uh, to begin authenticating these documents. And, um, now at this point, uh, they want, they, they tend to re-interview the, the, the respondent, the alien and his wife, which is fine. We're, we're, we're totally acceptable with that. But my final point would be that if this court were to, uh, dismiss this petition for review, then the VA is basically Vanamara, Velarde Pacheco would have no legal effect in this circuit because anytime the government does not want, uh, uh, an alien or rule proceedings or an immigration judge to assume jurisdiction over an adjustment of status, all they have to do is hold on to the file. I get that point. But in fact, you, you would still have your, that option further down the road, wouldn't you? Yeah. Once we reopened, they do the same thing. Yeah. And we'd be stuck at the same group in a circle. Thank you, Mr. Fernandez. Ms. Paris-Mendola. You know what I thought you might, you might do is just bring us up to date because you, you or someone from your office was good enough to give us an idea of what's, what's going on. Maybe you can tell us what the current status of this case is and, and the problem that has caused the delay. Yes, Your Honor. Um, I have the same information that, um, the petitioners council does that, um, there has, there will be an interview again of Mr. Hashmi in the next 30 to 60 days. Is that all that's remaining in this case? I thought that there was some investigation that, or some document that had to be, um, certified or inquired into in Pakistan. Oh, yes, Your Honor. That is the divorce decree, which, um, Mr. Hashmi submitted, um, in response to CIS's, the citizenship and information and immigration services request, um, which would have been altered. And so I believe that is right now the state department has that and is verifying, um, the, is trying to authenticate it in Pakistan. Do you know anything about that alteration? No, I don't, Your Honor. There's nothing in the record about that. And how, you know, there, there doesn't seem to be anything that, except for this straight comment from the BIA that, that there's an issue, which leads me to ask two things. One, uh, how'd the issue come up and why is it taking five years to deal with it? And two, how can the BIA, which is not a fact-finding body, start relying on stuff which is nowhere evident in the record below? Um, Your Honor, first of all, Mr. Hashmi is the cause of the delay because initially when he, um, submitted his I-130 visa petition and the I-130 visa is what establishes that he has a bona fide marriage to a United States citizen, he did not disclose his marriage in Pakistan. And when you say it's his fault that he did this, uh, how is that tied in with what the immigration judge did at all? Even if we accepted what you're saying here is the case, since the immigration judge didn't say word one about that, it shows up for the first time, I repeat, in a non-fact-finding bodies statement, the BIA statement. How, how can that be a proper basis for the BIA to say, no, you can't, you can't get a continuance? Okay. Yes, Your Honor. The important thing to understand here is that there are proceedings, Mr. Hashmi's proceedings are going along two parallel tracks. There are his removal proceedings, which are presided over by the immigration judge under the attorney general. And in the meantime, Mr. Hashmi is seeking relief from removal. Um, he will eventually, um, probably apply to adjust his immigration status to that of a lawful permanent resident. Those proceedings are handled by Citizenship and Homeland Security. Um, the immigration judge has no authority over CIS. It cannot grant the I-130 visa petition. It cannot, um, expedite or tell CIS to do it more quickly. Isn't he obligated to take that into account? I mean, isn't his responsibility in exercising his discretion not to simply say, Hey, I got, I got case management goals here, which is all that immigration judge's opinion says, doesn't say anything beyond that. Doesn't he have some obligation to recognize there's something else going on in the system here, particularly in a case where the government had stipulated to a further continuance so that this very issue could be dealt with? Yes, Your Honor. The issue here is that an immigration judge, like a trial judge, has a responsibility to dispose of cases efficiently. And in this case, the immigration judge only granted four continuances. He warned Mr. Hashmi at the penultimate hearing that the next one will be the last. We need to complete this. And that's reflected in the record. In addition, Mr. Hashmi said, well, I've done everything that I can do. He has not. He has an obligation to move this through CIS. There's nothing in the record to reflect, um, for example, he wrote any attorney's statement on the record that we've got it. We've, I think we finally got where the a file is worked out. Judge, the government agrees. We agree. The a file's coming back to Cherry Hill. Give us six months. That's in the record, right? When you say there's nothing in the record, that doesn't count as something in the record on behalf of Mr. Hashmi to show he's trying to move it through. That is something in the record. However, the fact that DHS stipulated that it would not oppose a six-month, um, continuance is not the only factor here. The immigration judge looks to see that there's been no progress on this. Nothing has happened for 18 months. And it's just, it's like being in trial court. Just because the parties stipulate to a six-month extension does not mean that a trial judge must grant it. What is it that you expected Mr. Hashmi to do? To write letters? To inquire where the file is? Yes, your honor. But the file is in the government's hands. Your honor, first of all, as I stated before, he is the cause of this problem. He submitted an altered document. Well, you're saying that, but we don't have anything in the record to show that. The immigration judge never said that. All we've got is your say-so and a, and a, and like I said, a stray sentence and a BIA decision reviewing an immigration judge's opinion that says nothing about it. So we're in a pretty tough spot to accept that, aren't we? Um, your honor, it is in the record and that's what I had to rely on here. Um, the, I believe it was the DHS council said that there has been an issue, um, the, there were, there was an altered document submitted and that's, and the state department has to investigate this and that is part of the delay. Now, I, the government here may not be entirely blameless. I understand there was an issue with having to file. There's a bit of an understatement. Well, let me ask you this. You've got a circumstance where, where, uh, you're saying that a judge has a responsibility to move a case. I don't think anybody would disagree with that. And certainly there are pressures on immigration judges and they have responsibilities as you've rightly noted. Uh, but part of their responsibility is of course to take account of what's happening in a specific case. And in this case, as you noted, he said, you're next. This is it. There's no more after this. So is the position of the government that no matter what happens next, take this case, for example, people come in and they say, we finally got the file in place where it needs to be. Both sides agree it's where it needs to be. Give us some time. It's going to get worked out. Period. But that is irrelevant in an, in an immigration judge's exercise of discretion. He can just say, I don't care. I told you that was the last one. That's the last one. No, Your Honor. I would not, we would not argue that that is irrelevant at all, but the judge, the immigration judge has to look at the totality of the circumstances and his authority to grant a continuance is really as a matter of grace and it's prescribed he really didn't look at the totality of the circumstances. So he just looked at one circumstance, which was his case docket and need to move or complete certain cases by, I believe it was eight or nine months. Your Honor, the record does not reflect that with all due respect. Um, why don't you instead of saying it doesn't, why don't you take us to the immigration judge's opinion and show us where he says anything except I have to move this case. Your Honor, this morning I read it again and that looked to me like that's all he said. He didn't say anything about an altered document. He didn't say anything about this is your fault. He didn't say there are other circumstances that weren't denying it. He said, I've given you enough time for continuance is enough. This was 18 months and it should have taken eight. You're done. Your Honor. Um, first of all, if had, well, I cannot take you to anything else in the immigration judge's opinion, which you've just summarized. Um, had Mr Hashmi or his counsel approached and said, you know, we've got an interview in two weeks and CIS has told us the Lincoln decision right away. If there's something like that, something that the immigration judge could have latched onto to grant, grant another extension. It wasn't enough to say they've got, we finally got the file for the right people. If you give time, it'll now get worked out because the delay has been the files over there. Now it's over here because they did say that, right? Yes, the circumstances here and that it looks like this was a fraudulent divorce decree. Um, it is very well denied. It's a fraudulent divorce decree. That's you saying that here. No fact finder has ever said that your Honor at this stage, it's all speculative. The relief that purely discretionary. And so there's no prejudice here. He is seeking a benefit from the United States. He should, if I were Mr Hashmi, this would be the most important thing in my life. These applications are routinely granted, aren't they? I am here. I married a U S citizen. I filed a I one 30 petition. They're routinely granted. The only thing that the government is saying now is that there may be a problem with a divorce decree, which may be altered, but that doesn't mean the I 30 is is terribly discretionary. That's likely going to be denied. Your Honor, we can't say at this point. It's entirely speculative. We can't say that it's likely or unlikely, but the island 30 establishes that the alien has a bona fide marriage, and we know that there was some problem with it, and that's reflecting the record and that it will take CIS time to adjudicate it. And also the fact that Mr Hashmi has another interview with CIS indicates that they must do more fact finding. So right now, everything is completely speculative. And I would add that this is a completely different situation than that in Velarde Pacheco as petitioners council raised that had to do with moving to reopen in a case where that I one 30 visa petition has been granted, and the bona fide marriage is established. You're not from the DHS, the Department of Homeland Security. Are you from CIS or oil? Your Honor? No, I'm not. I'm with oil. None of those oil office of immigration litigation. Yes, you disagree terribly with the position taken by DHS at the hearing before the IJ. Your Honor, do you mean the position that there's no opposition to the continuing adjournment in the case? Your Honor, it's not for me to decide, and I'm not here representing the Department of Homeland Security, but you've got the record before you. I mean, if you were there, you would take a different position. Your Honor, I really can't speculate because I don't. I'm not privy to the visa application proceedings before CIS on the part of oil to have this to have this matter stay pending a decision on the I one 30 application. Your Honor, at this point, granting a continuance for 18 months is an exceptionally long time, and the immigration judge has hundreds, if not thousands of cases before him that he must dispose of, and he must have his parents. You know that we get these applications all the time. We get applications for stays of removal pending a decision on any number of things. These are routine motions that we get, and we grant them when there's no generally when there's no problem established, and very often they're consented to. Your Honor, in my personal experience with this court, motions for stays are often denied as well. Well, they're denied, but if a reason is given why a matter should be continued, especially if it's waiting for a 930 petition, I wouldn't say they're routinely denied. Your Honor, I can't say whether they're routinely denied or not, but in this case where the judge has been waiting 18 months and there is nothing on the record, there are no letters from Mr. Hashmi. From your standpoint, what you want to see is no stay. You want us to affirm the IJ, which means, of course, that Mr. Hashmi has to leave and he will not be able to return for 10 years. Your Honor, he will be able to return. He can apply from Pakistan for a waiver of inadmissibility. Well, when you say two things. First, you keep saying there's nothing in the record that shows he pursued this. I'm flummoxed by that because I thought if you're represented by a lawyer and a lawyer says something in an open court, in an immigration court, that that's something on the record. Are you denying that on the record, in the last meeting before the immigration judge, this man's lawyer got up and said, we've got the file thing worked out, government agrees, give it a couple, give it a few months, it's done. Are you saying that that's not something that's actually in the record as we've been told? Your Honor, I apologize if that's how it was construed. I'm not denying that that's not something, but that's all there is, is just his representation, the representations of Mr. Hashmi's lawyer before the immigration judge. Well, not just those representations. I mean, I don't hear you denying that in fact the government agreed that that was an appropriate step because evidently the government agreed the file was going to make it to the right place and that would resolve it. So it's not just a lawyer speculation. It's an agreement between two parties in front of a decision maker, right? That's a stipulation, not just trial judge. Must you just simply grant an adjournment because the parties agreed to it? No, but you must exercise discretion taking into account all the circumstances. Now, one thing that your opponent said that's significant is that if we rule the way you're suggesting, the government has only to sit on a file until 18 months passes and then somebody's subject to removal. Even though they may have a perfectly valid marriage, everything else, it removes from the process any fairness that Velarde Pacheco was attempting to inject into the system and gives it into the hands of the bureaucracy simply to sit on a file and have people removed. What's your response to that? Yes, your honor. Well, first of all, if CIS were to deny the petition, the petitioner here could pursue an action under the Administrative Procedure Act in district court. So there is some recourse there and I believe that's what you're getting at with accountability. I'm getting at just sitting on the file because that's the ruling it seems like you're taking us to. The government has a dispute internally about who's going to get a file and that dispute results in no ruling on an I-130. And then on that separate track, the immigration judge says, enough's enough, you're gone because you still haven't got a ruling on your I-130. Your opponent argues that removes all sensible discretion from the system and results in simply a bureaucratic driving of whether somebody stays in the country or not. And can't be the right result. That's the argument I want you to respond to. Well, your argument, your honor, I'll try to respond to that. Again, the relief Mr. Hashmi is seeking is discretionary, something that can be granted by CIS. He's seeking a benefit from the government. He has a burden to pursue that. And I was surprised to hear petitioner's counsel today say that his United States citizen spouse has been inquiring daily about his visa petition because there's nothing in the record before the agency to reflect any level of diligence nearly approaching that. And the only thing we have are, again, Mr. Hashmi's counsel's representations before the immigration judge that yes, we're working things out. There is nothing else except for an 11th letter, I believe on March 5th, 2005, a couple of weeks before the last hearing before the immigration judge. I apologize, one last. Is it in fact the case based on your last letter to us that this file is in Cherry Hill now and it is being processed? Yes, it is, your honor. Ms. Parascondola, thank you very much. I have a question. In the letter that we received as a inquiry, it says that there will be a final interview which should occur in 60 to 90 days and a decision will follow. What will be the purpose of that final interview? What further facts can be developed from either the petitioner or his wife in that interview? Your honor, I don't know the specifics and there's nothing in the record about that. Although we do know there is an issue as to whether this is a bona fide marriage and it could be the divorce decree. There could be several things that we don't know about. We've talked about discretion or you've talked about discretion. When does the discretion that we're talking about arise? Is it after there's a visa petition that's been found to be valid or does the discretion arise that you're talking about with the immigration judge? The issue here before the court is the immigration judge's exercise of discretion. Not to continue the case? Not to continue the case. Mr. Hashmi was provided more than a full and fair hearing and a reasonable opportunity to present evidence. He has no statutory or constitutional right to relief from removal. It's important to keep that in mind. Accordingly, nothing here suggests an abuse of discretion. Okay. Thank you very much. We have your arguments, which are very helpful. I'm sorry, you have rebuttal. Okay. Thank you. We have your arguments and we have your brace. We'll reserve judgment. Thank you. Court is adjourned.